

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2006

# Wachtel v. Guardian Life Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 04-4304

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wachtel v. Guardian Life Ins Co" (2006). *2006 Decisions.* Paper 780.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/780

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-4304

ZEV WACHTEL; LINDA WACHTEL, individually and on
behalf of
of their minor children, Tory Jesse and Brett Wachtel,
and on behalf of all others similarly situated;

v.

GUARDIAN LIFE INSURANCE CO. OF AMERICA;
PHYSICIANS HEALTH SERVICES, INC.;
PHYSICIANS HEALTH SERVICES OF NEW JERSEY,
INC.;
HEALTH NET, INC.; HEALTH NET OF THE
NORTHEAST, INC.;
HEALTH NET OF NEW JERSEY, INC.

(District of New Jersey D.C. 01-CV-04183)


RENEE MCCOY, individually and on behalf of
all others similarly situated

v.

HEALTH NET, INC.;
HEALTH NET OF THE NORTHEAST, INC.;

HEALTH NET OF NEW JERSEY, INC.

(District of New Jersey D.C. 03-CV-01801)


Health Net, Inc.; Health Net of the Northeast, Inc.;
Health Net of New Jersey, Inc.,

Appellants


Case No: 04-4433

ZEV WACHTEL;
LINDA WACHTEL, individually and on behalf of
their minor children, Torrey Jesse and
Brett Wachtell, and on behalf of all others
similarly situated


v.


GUARDIAN LIFE INSURANCE CO. OF AMERICA;
PHYSICIANS HEALTH SERVICES, INC;
PHYSICIANS HEALTH SERVICES OF NEW JERSEY,
INC.;
HEALTH NET, INC.; HEALTH NET OF THE
NORTHEAST, INC.;
HEALTH NET OF NEW JERSEY, INC.

Health Net Inc., Health Net of the Northeast, Inc.,
Health Net of New Jersey, Inc.;

Appellants

Case No:  04-4434

RENEE MCCOY, individually and on
behalf of all others similarly situated

v.

HEALTH NET, INC.;
HEALTH NET OF THE NORTHEAST, INC.,
HEALTH NET OF NEW JERSEY, INC.

Appellants

On Appeal from the United States District Court
for the District of New Jersey
District Court Nos. 01-CV-04183; 03-CV-01801
District Judge: The Honorable Faith S. Hochberg

Argued December 15, 2005

Before: SLOVITER, SMITH, and VAN ANTWERPEN,
*Circuit Judges*


(Filed: June 30, 2006)

_____

Counsel:      Peter Buscemi (Argued)
Morgan, Lewis & Bockius
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

Theodore D. Aden
Herve Gouraige
Epstein, Becker & Green
Two Gateway Center
12th Floor
Newark, NJ 07102

John J. Gibbons
Gibbons, Del Deo, Dolan, Griffinger &
Vecchione
One Riverfront Plaza
Newark, NJ 07102-5497

Joseph B.G. Fay
Jay H. Calvert, Jr.
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

William S. Greenberg
B. John Pendleton, Jr.
McCarter & English
100 Mulberry Street
Four Gateway Center
Newark, NJ 07102-0652
*Counsel for Appellants*

Stanley M. Grossman (Argued)
D. Brian Hufford
Pomerantz, Haudek, Block, Grossman &
Gross
100 Park Avenue
26th Floor
New York, NY 10017

Stuart M. Feinblatt
Sills, Cummis, Epstein & Gross
One Riverfront Plaza
Newark, NJ 07102
*Counsel for Appellees*

Mary Ellen Signorille
American Associations of Retired
Persons
601 E. Street N.W.
Washington, DC 20049
*Counsel for Amicus-Appellee*

---

OPINION OF THE COURT

5

SMITH, *Circuit Judge*

The central question presented by this interlocutory appeal is whether the District Court properly certified the underlying consolidated matters as class actions. Appellants Health Net, Inc., Health Net of the Northeast, Inc., and Health Net of New Jersey, Inc. (collectively, "Health Net") attack the District Court's Certification Order based, *inter alia*, on the assertion that the Order failed properly to define the class claims, issues or defenses pursuant to Federal Rule of Civil Procedure 23(c)(1)(B). Because we agree with Health Net that the District Court erred by failing to define the claims, issues, or defenses to be treated on a class basis, we will vacate the Certification Order and remand the case to the District Court.[1]

_____

[1]Health Net also argues: (1) that as a substantive matter, the District Court should have parsed the issues presented in the case and designated some for class treatment and some for individual treatment under Federal Rule of Civil Procedure 24(c)(4)(A); (2) that the Court abused its discretion by concluding that issues common to the class predominate over individual issues for purposes of Rule 23(b)(3); and (3) that the District Court improperly made a class-wide merits determination by finding that exhaustion of administrative remedies was futile as to the entire class, such that its Rule 23(b)(3) predominance analysis was fatally flawed. Because we conclude that analysis of these questions is best conducted with

I.

A.

Health Net appeals the District Court's Order certifying two nationwide classes in actions against Health Net, *Wachtel v. Guardian Life Ins. Co.*[2] ("*Wachtel*") and *McCoy v. Health Net, Inc.* ("*McCoy*"). Health Net of New Jersey is a New Jersey health benefit plan that provides medical benefits to members; its corporate parent is Health Net of the Northeast, and Health Net, Inc. is the ultimate corporate parent of both companies. Health Net of the Northeast is Health Net, Inc.'s eastern division and also owns Health Net of New York, Inc. and Health Net of Connecticut, Inc. Health Net, Inc. (the nationwide corporate parent of all Health Net subsidiaries) also owns licensed state plans in three western states, Health Net of California, Inc., Health Net of Arizona, Inc., and Health Net of Oregon, Inc.

---

the benefit of a clear initial definition of the claims, issues, and defenses to be treated on a class basis, and because we are remanding for further proceedings, we will not address them in this Opinion.

[2]Guardian Life Insurance Company was dismissed by stipulation of the parties on March 22, 2004 and is no longer a party to the litigation. Health Net, Inc. and its subsidiaries are the only remaining defendant-appellants.

Within the relevant states, Health Net subsidiaries offer medical benefits through three different types of network health plans: health maintenance organizations ("HMOs"), preferred provider organizations ("PPOs"), and point-of-service ("POS") plans. Plaintiff-appellees Zev and Linda Wachtel and Renee McCoy ("Plaintiffs") are beneficiaries in POS plans offered and administered by Health Net.[3] A POS plan permits a participant to obtain health care from either in-network ("INET") or out-of-network ("ONET") medical providers. Providers are INET by virtue of negotiating with a Health Net subsidiary to offer cost savings to plan subscribers via significantly discounted fee rates. ONET providers have not negotiated lower rates and are free to charge their normal fees. Beneficiaries pay higher premiums for POS and other plans that permit access to ONET providers.

The issues in these consolidated cases involve reimbursement in connection with services from ONET providers. As noted by the District Court, "Health Net's plan contracts do not cover an entire fee charged by an out-of-network provider." Plan participants may be held responsible (through "balance billing") by such providers for charges in

---

[3]For the purpose of class action certification, Plaintiffs allege that Health Net, Inc. is a fiduciary and plan "administrator" under the Employee Retirement Income Security Act ("ERISA"). Whether Health Net Inc. qualifies as an "administrator" under ERISA for trial purposes will be litigated in the District Court through further pre-trial motions.

excess of the amount Health Net determines to be usual, customary, and reasonable charges ("UCR") for the services provided. The amount for which beneficiaries are liable for ONET services is almost entirely dependent on how Health Net calculates UCR. Health Net plan terms, contained in various Health Net contracts, or Evidence of Coverage ("EOCs")[4] state that Health Net uses a national third-party database to determine UCR. The District Court found that Health Net relies on two "substantially similar" databases provided by Ingenix, Inc., known as the Prevailing Health Charge System ("PHCS") and Medical Data Research ("MDR") (collectively, the "Ingenix databases").

Plaintiffs sue under four provisions of the Employee Retirement Income Security Act ("ERISA"). The first is ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which permits a civil action by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* The second is § 502(a)(3), 29 U.S.C. § 1132(a)(3), which permits a participant or beneficiary to "(A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B)

_____

[4]Beneficiaries receive EOCs (plan contracts) and Summary Plan Descriptions ("SPDs"). ERISA requires that these documents be given to all beneficiaries for the purpose of explaining the terms and coverages of their health plans.

to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.* Plaintiffs sue under § 502(a)(3) for various alleged breaches of fiduciary duties. Plaintiffs also bring claims under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), for failure to supply information upon request and under ERISA § 102, 29 U.S.C. § 1022, for failure to issue appropriate SPDs.

Plaintiffs allege that, although Health Net admits that it is required to use databases that are "valid and appropriate for determining UCR,"[5] Health Net uniformly uses the Ingenix databases, which Plaintiffs allege are invalid in that fundamental flaws in the data "result in the systematic manipulation and downward skewing of the database UCR numbers." Assuming the Ingenix databases are invalid, their use to calculate UCR charges breaches the terms of the plans and leads to systematic under-reimbursement of providers, resulting in inappropriately high financial liability for beneficiaries in the form of outstanding "balances" to providers. Plaintiffs allege actual out-of-pocket losses as a result of under-reimbursement. Plaintiffs contend that Health Net must pay unpaid benefits to class members either by using a valid database or by paying the providers' billed charges, whichever is less.

---

[5]Health Net contests that it has made such an admission. That said, the District Court properly observed that "the merits of disputed facts are not reached" at the class certification stage.

10

Plaintiffs also challenge other Health Net policies and practices, which they allege Health Net applies uniformly across various plans, providers, and beneficiaries to determine ONET reimbursements. These policies include: (1) relying on an outdated version of an Ingenix database ("outdated data"); (2) reducing ONET reimbursements when multiple procedures are performed on the same day (the "multiple surgery rule"), despite the fact that plan terms fail to disclose the existence or substance of such a rule; (3) systematically reducing or terminating ONET reimbursements for services provided by assistant surgeons or co-surgeons (the "assistant surgeon rule") by use of an undisclosed and incomplete list of services; (4) determining UCR amounts for pharmaceuticals using the Average Wholesale Price ("AWP"), a national number of manufacturers' list prices that is inappropriate for UCR and not disclosed by Health Net; and (5) failing to disclose reimbursement policies in EOCs and SPDs as required by ERISA.

B.

The District Court, by its Opinion and Order dated August 5, 2004, certified the *Wachtel* and *McCoy* lawsuits as class actions under Federal Rule of Civil Procedure 23(b)(3), and directed Plaintiffs to submit a plan for notification of the certified classes. Health Net filed a petition in this Court under Rule 23(f) requesting review of the certification order. Health Net also moved the District Court to stay the distribution of the notice pending resolution of the Rule 23(f) petition. The

District Court denied the stay on November 12, 2004. On that same day, Health Net filed a notice of appeal and asked this Court for immediate review of the District Court's denial of a stay of the class notice distribution. On November 15, 2004, this Court granted Health Net's Rule 23(f) petition (agreeing to review the certification order) and granted a temporary stay of class notice until November 30, 2004, which it later extended indefinitely pending the resolution of the Rule 23(f) appeal.

The instant appeal involves three consolidated proceedings in this Court. On August 9, 2004, the *Wachtel* and *McCoy* cases were consolidated by the District Court. On November 12, 2004, Health Net filed a notice of appeal from the District Court's Order in the consolidated cases denying Health Net's motion to stay the issuance of class notice pending resolution of the Rule 23(f) petition. That appeal was docketed in this Court as No. 04-4304. Health Net's appeal of the class certification itself received new docket numbers after it was granted. The Rule 23(f) appeal in *Wachtel* is docketed as 04-4433, and the appeal in *McCoy* is docketed as 04-4434. These three matters were all consolidated in this Court by Order entered on November 24, 2004.

II.

This Court certified the instant appeal. The claims of the *Wachtel* and *McCoy* cases raise federal questions under § 502 of ERISA, 29 U.S.C. § 1132. The District Court thus had original

12

jurisdiction under 28 U.S.C. § 1331. We exercise appellate review under 28 U.S.C. § 1292(e), pursuant to which the Supreme Court promulgated Federal Rule of Civil Procedure 23(f), which provides for interlocutory appeals of a district court order granting or denying class certification.

"We review the District Court's decisions on class certification for abuse of discretion." *Chiang v. Veneman*, 385 F.3d 256, 264 (3d Cir. 2004). "The District Court abuses its discretion only if its decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.'" *Id.* (internal citation omitted).

III.

A.

Federal Rule of Civil Procedure 23, which deals with class actions, underwent substantial amendment in 2003, and the amendments took effect on December 1 of that year. *See* 28 U.S.C. § 2074(a). Included as part of the 2003 amendments to the rule was newly-created Subdivision (c)(1)(B), which provides in relevant part that "[a]n order certifying a class action must define the class and the class claims, issues, or defenses . . . ." FED. R. CIV. P. 23(c)(1)(B).

In our efforts to determine precisely what district courts must do in order properly to "define" those claims, issues, or

13

defenses appropriate for class treatment in a given matter, we find ourselves in uncharted waters. Not only are the requirements of Rule 23(c)(1)(B) a matter of first impression for this Court, but, to our knowledge, neither our sister courts of appeals nor any other federal court has addressed the issue. Furthermore, the Advisory Committee Notes accompanying the text of Rule 23 make no explicit reference to Subdivision (c)(1)(B). Nonetheless, we conclude that the plain text of the Subdivision, especially when considered in light of the text and structure of parallel provisions in Rule 23, indicate that Rule 23(c)(1)(B) requires district courts to include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment.

Current practice often falls short of that standard. Certification orders tend to treat the parameters of the class itself much more clearly and deliberately than the class claims, issues, or defenses. In response to plaintiffs' motions for class certification, district courts often issue memorandum opinions discussing the allegations in the complaint, the facts of the case, and some combination of the substantive requirements for class certification found in Rule 23(a) and (b). Several of these substantive provisions may even lead to discussion of "common" versus "individual" issues present in the case. *See* FED. R. CIV. P. 23(a)(2) (indicating that the existence of issues of law and fact common to the class is required before certification is appropriate); FED. R. CIV. P. 23(b)(3) (requiring that issues of law or fact common to the class "predominate"

14

over individual issues).

At the conclusion of this type of opinion, or in an accompanying certification order, the court typically states that it is certifying "the following class," or uses some equivalent language, followed by a block paragraph describing precisely those individuals to be included as part of the relevant class or classes. Although examples of common claims, issues, or defenses presented by the case may be discussed as part of the court's commonality, typicality, or predominance analysis, certification orders and memoranda are most often devoid of any clear statement regarding the full scope and parameters of the claims, issues or defenses to be treated on a class basis as the matter is litigated.

We conclude that the plain text of Rule 23(c) as amended requires more specific and more deliberate treatment of the class issues, claims, and defenses than the practice described above has usually reflected. More specifically, in our view, the proper substantive inquiry for an appellate tribunal reviewing a certification order for Rule 23(c)(1)(B) compliance is whether the precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis are readily discernible from the text either of the certification order itself or of an incorporated memorandum opinion.

We arrive at this conclusion primarily through textual analysis of Rule 23(c)(1)(B) itself. To "define" a thing or

15

concept is "to state precisely or determinately [its boundaries]; to specify" or "[t]o frame or give a precise description" of a thing. *Oxford English Dictionary* (2d ed. 1989). According to the Rule, those things to be defined in a certification order include the "class *and* the class claims, issues, or defenses . . . ." FED. R. CIV. P. 23(c)(1)(B) (emphasis added). The above elements occur in a conjunctive, undifferentiated list, indicating that the requirement to "define" the "class claims, issues or defenses" is identical to the requirement to define the "class" itself within a given certification order. *Id.* Furthermore, the use of the definite article "the" before "class claims, issues, or defenses" connotes comprehensiveness and specificity, rather than illustrative or partial treatment, in defining those aspects of class action certification.

The substantive standard that we have laid out above also comports with and facilitates compliance with the textual requirements and apparent purpose of other provisions of Rule 23. For instance, Rule 23(c)(2) indicates that for any class certified under Rule 23(b)(1) or (2), "the court may direct appropriate notice to the class," FED. R. CIV. P. 23(c)(2)(A), and that for any class certified under Rule 23(b)(3), "the court *must* direct to class members the best notice practicable under the circumstances." FED. R. CIV. P. 23(c)(2)(B) (emphasis added). That notice must, *inter alia*, "concisely and clearly state . . . the definition of the class certified" and "the class claims, issues or defenses." *Id.* Clear and complete treatment of both the class and the class claims, issues, or defenses at the class certification

16

stage will unquestionably facilitate the timely execution of what is almost always the next step – in fact, often a mandatory next step, *see* FED. R. CIV. P. 23(c)(2)(B) – in class action litigation, namely the court-supervised distribution of class notice to class members.[6]

---

[6]The Advisory Committee notes accompanying the 2003 amendments to Rule 23 point out that in an attempt to aid courts and practitioners in composing adequate class notices, the Federal Judicial Center has created a series of sample class notices pertaining to hypothetical class actions of different types. The sample notice pertaining to an action against a company – in which no settlement has been reached as of the distribution of the notice – attempts to clearly and succinctly answer a host of questions so that class members can make an informed choice as to whether to opt out of the class. *See* Federal Judicial Center, *Employment Discrimination Class Action Certification: Full Notice*, http://www.fjc.gov/public/pdf.nsf/lookup/ClaActII.pdf/$file/ClaActII.pdf (last visited June 15, 2006). Those questions include, *inter alia*, "What does the lawsuit complain about?"; "How does [the company] answer?"; "What are the Plaintiffs asking for?"; "Who is in the Class[?]"; and "Am I a part of this Class?". *Id.* Just as a court's clear summation of the class parameters greatly aids the court and class counsel in providing information regarding the latter two questions, a clear and complete summation of the claims, issues, or defenses subject to class treatment will facilitate the provision of more informative and authoritative answers to the preceding questions.

Furthermore, compliance with the requirements of Rule 23(c)(1)(B) as we have defined them today will significantly aid appellate review of a district court's decision to certify a matter as a class action. Most significantly, it seems self-evident that a clear and complete statement of the claims, issues, or defenses to be treated on a class basis will shed light on a district court's numerosity, commonality, typicality, and predominance analysis under Rule 23(a) and (b). In addition, Rule 23(c)(4)(A) states that "[w]hen appropriate (A) an action may be brought or maintained as a class action with respect to particular issues . . . ." *Id.* Not only is there overlap between compliance with Rule 23(c)(1)(B) and compliance with Rule 23(c)(4)(A), but compliance with the former as we define it today will greatly facilitate meaningful appellate review of complex certification decisions regarding the latter.

Although we regard the plain text argument outlined above as sufficient to support our holding, we note that in addition to comporting with the text of the Rule itself, the standard for compliance with Rule 23(c)(1)(B) that we outline today dovetails with the apparent purpose and goals of amending the Rule as expressed in the Advisory Committee Notes. As mentioned above, the Advisory Committee's Notes accompanying the 2003 amendments to the text of Rule 23 contain no explicit reference to Rule 23(c)(1)(B). Having said that, the Notes to Rule 23(c)(1)(A) – dealing with the timing of class action certification – state that in a certification context, one "critical need is to determine how the case will be tried,"

18

such that in addition to requiring counsel to submit proposed classes to the court prior to certification, "[a]n increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible to class-wide proof."[7] FED. R. CIV. P. 23(c)(1)(A) advisory committee's note. The interpretation of Rule 23(c)(1)(B) that we adopt today will aid courts and parties in meeting this "critical" need by necessitating the full and clear articulation of the litigation's contours at the time of class certification.[8]

---

[7]We believe that the pre-certification presentation of the aforementioned trial plans represents an advisable practice within the class action arena, and we note that such instruments could be used by parties and trial courts to facilitate Rule 23(c)(1)(B) compliance regarding the claims, issues, or defenses subject to class treatment in the same way that class language proposed by the parties aids trial courts in defining the precise parameters of a given class for certification purposes.

[8]We acknowledge that class actions often present extraordinarily complex factual and legal scenarios, such that a complete list of the claims, issues, or defenses appropriate for class treatment may be difficult to discern or articulate at the time of certification. In addition, the 2003 amendments to the Rule eliminated so-called "conditional" certifications – formerly available under Rule 23(c)(1)(C) – such that a trial court may not certify only a limited list of class claims or issues while explicitly delaying decision on other claims. The potential

19

In addition to the Advisory Committee's Notes accompanying the text, the published Report of the Standing Committee on Rules of Practice and Procedure ("Committee Report"), i.e., the Advisory Committee's input to the Judicial Conference as to whether to adopt certain amendments to the Rule, reflects overwhelming support for the adoption of what is now Rule 23(c)(1)(B). More specifically, members of the Committee indicated that adoption of the amendment was worthwhile inasmuch as its inclusion in the rule would aid appellate review of class action certification decisions and would facilitate the distribution of class notices that would better enable class members to make informed opt out decisions. *See generally* Report of the Standing Committee on Rules of Practice and Procedure (published September 2002) (encompassing Committee activity as of that date, including, *inter alia*, comments that the inclusion of Rule 23(c)(1)(B) "will clarify the issues for the parties and the appellate court," that the

difficulty posed by the requirements of Rule 23(c)(1)(B), however, is tacitly acknowledged and directly mitigated by amended Rule 23(c)(1)(C), which allows that a certification order may be "altered or amended" at any time "before final judgment." Furthermore, to the extent that circumstances genuinely warrant some evolution in the matters to be treated on a class basis in a given action, the full and clear articulation of those claims, issues, or defenses intended to be treated on a class basis at the time of the original certification order will provide a defined status quo that likely will serve to streamline any later process of adjustment.

amendment "will facilitate appellate review," and that the amendment will "reduce uncertainty and increase the likelihood of settlement").[9] We agree that enforcement of Rule 23(c)(1)(B) as written will help to streamline class action litigation generally, will facilitate appellate review of class certification decisions, and will help class members – the intended beneficiaries of class action litigation – to make informed decisions as to their rights and options in opting out of a particular action.

---

[9]Indeed, a full review of the Committee Report reveals ample support for even more specificity than is currently required by the amended Rule. One representative comment stated:

> The (c)(1)(B) provisions should be made more pointed. . . . [A]ppellate courts are finding that it is difficult to "figur[e] out what the District Court intended to treat on a class basis * * * I would urge that the proposed rule be clarified to specify that a District Court indicate which elements of the class claims and defenses thereto it intended to try on a class basis, thereby indicating by omission what elements of those claims would be left to be adjudicated on an individual basis." The Note should state that one purpose is to facilitate appellate review.

Committee Report, comment and written statement by John Beisner, Esq. (emphasis in original).

In summary, we hold that the requirement of Rule 23(c)(1)(B) that a certification order "define the class and the class claims, issues, or defenses," means that the text of the order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis.[10]

IV.

Applying the above standard, we conclude that the Certification Order and accompanying Memorandum Opinion (collectively, the "Order") in the instant case fail to meet the substantive requirements of Rule 23(c)(1)(B). Although the Order meets the requirements of the Rule as to the class

---

[10]To be sure, no particular format is necessary in order to meet the substantive requirement of the Rule, and we will not set aside substantively conforming certification orders purely over matters of form. That said, we reiterate our holding that the list of claims, issues, or defenses to be treated on a class basis must be readily discernible from the text of the order or memorandum opinion, and we note that in future cases, the appearance within a certification order of a concise paragraph – similar to paragraphs often drafted to define the class itself and fully listing the claims, issues or defenses to be treated on a class basis – would come well within the parameters of the "readily discernible" requirement.

composition, it nonetheless fails because it neglects to define the claims, issues, or defenses to be treated on a class basis.

As an initial matter, we note that the Order easily meets the requirements of Rule 23(c)(1)(B) with respect to the definition of the class itself. Near the end of its Opinion, the District Court, pursuant to its "superiority" determination,[11] engaged in substantial discussion on the issue of whether to include certain members or health plans within the classes it will certify. The Court ultimately determined that at this initial stage, it would include members of all of Health Net's plans within the scope of the class. The Court also pointed out that, if necessary, it could divide the classes into subclasses should the case prove unmanageable or should it otherwise become appropriate. In addition to that more general analysis, the Court included section "E. Definition of the Classes:" at the end of its Memorandum Opinion. Under that heading, the Court stated that it "grants class certification for the following classes," after which the Court explicitly and precisely defined the two classes

---

[11]In addition to requiring that issues common to the class "predominate" over individual issues, Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

to be certified.[12]    Finally, the Order itself stated that class

---

[12]Both classes referred to in the original Order have since been amended and will likely undergo further amendment.  The first class, as amended upon Health Net's motion on October 7, 2004, is the *Wachtel* class, defined as

> All persons in the United States who are, or were, from April 1997 to August 2004 subscribers or beneficiaries in any large or small employer plan, other than in a New Jersey small employer plan, who received medical services or supplies (including, inter alia, surgery, anesthesia, and the like) from an out-of-network provider and for whom Defendants made reimbursement determinations less than the providers' actual charge.

Jt. App. 52.  The second class, also as amended, is the *McCoy* class, defined as

> All persons in the United States who are, or were, from July 1995 through August 2004 subscribers or beneficiaries in any New Jersey small employer plan, who received medical services or supplies (including, inter alia, surgery, anesthesia, and the like) from an out-of-network provider and for whom Defendants made reimbursement determinations less than the providers' actual charge.

24

certification would be granted "for the classes defined in the Opinion accompanying this Order . . . ." The Order clearly and precisely defines the classes themselves and therefore meets that requirement of Rule 23(c)(1)(B).

By contrast, the Order's discussion of class claims, issues, or defenses is unclear, intermittent, and incomplete, and nothing in the Order evidences an intent to explicitly define which claims, issues, or defenses are to be treated on a class basis for the remainder of the litigation. For example, in a footnote explaining why the cases have been consolidated, the Court made the general statement that both the Wachtel and McCoy cases "contain significant common questions of law and fact," and also stated that the common questions in both cases "relate to allegations that, *inter alia*, Health New [sic] used outdated data to determine Usual, Customary, and Reasonable charges, applied improper reimbursement methods, and failed to provide adequate disclosures to beneficiaries." The very use of the phrase "*inter alia*" ("among other things") in the latter statement suggests that it is intentionally incomplete. Furthermore, as mentioned above, the context in which the statements occurred indicates that they were meant to justify the Court's preliminary decision to consolidate the cases – not to address issues or claims to be treated on a class basis.

Other statements in the Order suffer similar inadequacies.

_____

*Id.*

25

As part of its "Commonality and Predominance" analysis, the Court stated that the "issues of law and fact relating to whether Health Net fully disclosed and properly applied its reimbursement mechanisms for out-of-network provider services are common to the class members and predominate over individual questions." Ten pages later, in reaffirming its previous conclusion that common issues predominate individual issues such that class certification is generally appropriate, the Court stated that the "legal and factual issues regarding Health Net's alleged use of improper reimbursement practices are central to the determination of Health Net's liability to each class member." Although both of the above statements touch on categories of issues that are common to the class members, both are general, non-exclusive statements that fail to articulate the particular claims asserted by Plaintiffs; neither statement mentions any legal provisions allegedly violated by Health Net; both statements are made in the course of analysis that is distinct from analysis meant to define class claims, issues, or defenses; and as a practical matter, neither statement addresses with any precision or formality which claims, issues, or defenses will be litigated on a class basis moving forward. In addition, the Order itself – which serves formally to certify the class action and which explicitly incorporates the language of the Opinion defining the classes – makes no reference to these or any other statements relating to claims, issues, or defenses to be treated on a class basis.

It is conceivable that we could cobble together the

26

various statements quoted above and reach a general inference as to some categories of issues that the District Court believes are appropriate for class treatment. As we have discussed at length, however, that level of direction in a certification order is insufficient under Rule 23(c)(1)(B). A certification order or opinion that requires a reviewing appellate court to comb the entirety of its text searching for isolated statements that may add up to a partial list of class claims, issues, or defenses falls short of the readily discernible and complete list of class claims, issues, or defenses required by the Rule. Under Rule 23(c)(1)(B), a sufficient certification order must, in some clear and cogent form, define the claims, issues, or defenses to be treated on a class basis. The instant Order fails to meet that requirement.

V.

For the reasons stated above, we will vacate the Certification Order and remand to the District Court for a definition of the claims, issues, or defenses to be treated on a class basis.